Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000684
28-MAR-2019
08:23 AM

NO. CAAP-15-0000684

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JOY P. LEONG and STEPHEN B. LINDSEY, III,
Plaintiffs-Appellants/Cross-Appellees, v. HONOLULU FORD, INC.,
Defendant-Appellee/Cross-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL NO. 1RC14-1-7680)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Chan and Hiraoka, JJ.)

Plaintiffs-Appellants/Cross-Appellees Joy P. Leong and
Stephen B. Lindsey, III (collectively, Buyers) appeal from the
District Court of the First Circuit Honolulu Division's (District
Court) Order on Motion for Summary Judgment[1] entered on March 24,
2015 (Summary Judgment Order), and the Judgment[2] entered on
August 25, 2015, against Buyers on all claims. Defendant-
Appellee/Cross-Appellant Honolulu Ford, Inc. (HFI), cross-appeals
and challenges the District Court's August 13, 2015 Order on
HFI's Non-Hearing Motion for Recovery of Attorneys Fees and Costs

---

[1]    The Honorable Michael K. Tanigawa presided over the summary
judgment hearing and entered the Summary Judgment Order.

[2]    The Honorable Gerald H. Kibe presided over the trial and entered
the Judgment.

(Fees and Costs Order),[3] where attorney's fees were denied pursuant to Hawaii Revised Statutes (HRS) § 480-13 (2008).[4]

Buyers alleged a series of unfair or deceptive acts or practices (UDAP) under HRS § 480-2 (2008),[5] argued that the purchase was therefore void, and sought refund of $1,000.00 made as a down-payment/deposit, treble actual damages, and statutory damages for each UDAP pursuant to HRS § 480-13(b)(1).[6] HFI sought attorney's fees as prevailing party related to the litigation for claims in the nature of assumpsit pursuant to HRS § 607-14 (2016) and costs pursuant to HRS § 607-9 (2016) and District Court Rules of Civil Procedure Rule 54. The District Court rejected all of Buyers' UDAP claims, denied HFI's attorney's fees request, and granted HFI's costs.

---

[3] The Honorable Gerald H. Kibe entered the Fees and Costs Order.

[4] HRS § 480-13(b)(1) provides, in pertinent part:

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. . . .

[5] HRS § 480-2 states, in relevant part:

**Unfair competition, practices, declared unlawful.**
(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

. . . .

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

[6] See supra note 4.

## I. BACKGROUND

A.   **Background Facts**[7]

This appeal arises from a dispute over the purchase of a used 2009 Shelby Cobra GT500KR, a limited edition of an exotic version of a Ford Mustang (Vehicle). On September 22, 2013, after viewing an advertisement on the HFI website, Buyers went to HFI to test-drive the Vehicle. The Vehicle was a used, rare, high-performance racing automobile with a manual transmission and 15,261 miles on it. Buyers claimed they agreed on a purchase price of $40,000.00, but HFI listed the price on the purchase agreement as $41,800.47.

After test-driving the Vehicle, Buyers purchased it with a third-party service contract identified as a PremiumCARE Extended Service Plan, and Guaranteed Auto Protection (GAP) insurance. Buyers executed an Automobile Purchase Agreement and gave a $1,000.00 down payment to HFI. Buyers were aware that they would not receive possession of the Vehicle on September 22, 2013, because they did not have proof that the Vehicle was covered under their motor vehicle insurance policy and, due to financing issues, they would need to sign a new purchase agreement. After executing this first agreement, it was also discovered that the Vehicle was excluded from coverage under the PremiumCARE Extended Service Plan.

On September 23, 2013, Buyers voluntarily executed a second Automobile Purchase Agreement which included the purchase of a different third-party service contract offered by Warranty Solutions covering the Vehicle. Pursuant to the second agreement, Buyers agreed: (1) to purchase the Vehicle with the Warranty Solutions coverage; (2) that the total purchase price for the Vehicle, including GAP insurance and Warranty Solutions Service Plan, was $47,917.28; (3) that the Vehicle was being sold "as is"; and (4) that if Buyers did not accept delivery of the Vehicle, HFI could keep Buyers' $1,000.00 deposit.

---

[7]    Except as noted, these facts are taken from those uncontested findings issued by the District Court in its Findings of Fact and Conclusions of Law filed on November 16, 2015.

A Buyer's Guide was prominently displayed in the window of the Vehicle at the time Buyers inspected and test-drove the Vehicle. The Buyer's Guide is a form that used car dealers are required by Federal law to display on vehicles for sale and provide to buyers. The Buyer's Guide provides a uniform method for disclosing warranty information. If a warranty is provided, each vehicle part covered by the warranty must be identified on the first page of the Buyer's Guide. The warranty section on page one of the Buyer's Guide provided that the Vehicle was being sold "As Is - No Warranty" but also provided a limited warranty for specific systems pursuant to HRS § 481J-2 (2008).[8] The Buyer's Guide listed various major defects which may occur in used cars and contained an explanation[9] of the meaning of an "as is" purchase. Buyers reviewed and signed the Buyer's Guide. Buyers executed numerous documents that included bold-face type explicitly disclosing to Buyers that the Vehicle was being sold "as is". Buyers took possession of the Vehicle on September 23, 2013.

---

[8] HRS § 481J-2, provides, in pertinent part:

(a) No used motor vehicle shall be sold in this State by a dealer to a consumer unless accompanied by a written warranty covering the full cost of both parts and labor necessary to repair any defect or malfunction in a part covered under subsection (c) that impairs the used motor vehicle's safety or use. Defects and malfunctions that affect only appearance shall not be deemed to impair safety or use for the purposes of this chapter.

. . . .

(c) The written warranty shall require the dealer or its agent to repair or, at the election of the dealer, reimburse the consumer for the reasonable costs of repairing the failure of a covered part. Covered parts shall at least include the following items:

. . . .

(2) Transmission, including the transmission case, internal parts, torque converter, gaskets, and seals[.]

[9] "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about this vehicle."

After taking possession of the Vehicle, Buyers returned the Vehicle to HFI with clutch damage. Buyers alleged the HFI Finance Manager agreed to cancel the purchase agreement and refund their deposit, and placed a September 26 email he wrote to that effect into evidence. Henry Tabios (Tabios), an "ASE-certified technician" employed by HFI, inspected the Vehicle after it was returned by Buyers. Alfred Costa, who was the prior owner of the Vehicle and traded the Vehicle in to HFI prior to its purchase by Buyers, experienced no problems with the clutch during the time he owned and operated the Vehicle. HFI employees who inspected the Vehicle before it was sold to Buyers did not experience problems with the clutch. HFI offered to pay for half of the repairs for Buyers; Plaintiff declined HFI'S offer and demanded that the sale be rescinded. HFI allowed Buyers to rescind the transaction; however, HFI retained Buyers' $1,000.00 down payment to offset costs to repair the clutch, which exceeded $1,000.00.

B. **Procedural History**

Buyers filed their Complaint against HFI on September 15, 2014 and amended it on January 23, 2015. The amended complaint alleged thirteen (13) UDAP claims: (1) HFI highballed Buyers; (2) HFI changed the price; (3) at delivery the clutch was defective and HFI later agreed to repair the clutch; (4) HFI agreed to cancel the sale and refund the $1,000.00 deposit; (5) HFI misrepresented Buyers were required to complete the purchase; (6) HFI misrepresented to Buyers' creditor J.P. Morgan/Chase that the purchase would be completed; (7) HFI was required by HRS § 481J-2(c)[10] to repair the clutch at no cost to Buyers; (8) HFI's description of the Vehicle as "as is" was in conflict of the notice requirement of HRS § 481J-5 (2008);[11] (9) HFI misrepresented that the Warranty Solutions extended

---

[10]     HRS § 481J-2(c), supra note 8.

[11]     HRS § 481J-5(c) provides:

>    (c) The failure of a dealer to provide the warranty or notices required by this chapter or the provision of false or misleading notices or warranties shall constitute prima facie evidence of an unfair or deceptive act under chapter 480.

warranty would pay for any and all repairs, and was therefore obligated to repair the clutch itself; (10) HFI committed an intentional tort in threatening to report the Vehicle as repossessed; (11) when HFI found more favorable financing it increased the cost of GAP insurance; (12) HFI made misrepresentations to the credit card company when Buyers disputed the charge; and (13) HFI repeatedly telephoned to threaten legal action unless Buyers completed the purchase. Buyers sought $3,000.00 as treble damages for the $1,000.00 deposit, statutory damages of $1,000.00 for each of the remaining twelve (12) UDAP violations, punitive and exemplary damages, reasonable attorney's fees and costs, and any other relief the court deemed just.

HFI moved for summary judgment. HFI made two arguments supporting their position that they were not responsible for repairing the clutch. First, HFI interpreted the HRS § 481J-2(c)(2) statutory warranty to not include the clutch. Second, the Vehicle was sold "as is," the Buyers damaged the clutch, but wanted HFI to pay for the damage. To support this argument, they produced (a) the purchase agreements stating the sale was "as is;" (b) the Buyer's Guide stating the sale was "as is" with the major defects section initialed by the Buyers; (c) a statement from the prior owner that the clutch was not damaged; (d) a Used Vehicle Inspection Checklist that did not identify clutch damage; and (e) the Warranty Solutions extended service contract that excluded clutch damage.

A hearing was held on February 23, 2015, and the Summary Judgment Order was entered on March 24, 2015 in favor of HFI as to nine of the thirteen UDAP claims. The District Court granted summary judgment on Buyers' UDAP claims 1-6, 10, 12, and 13.[12] The court denied summary judgment on Buyers' claims 7 and

---

[12] It appears that the court denied summary judgment on claim 2 at the hearing, but the written order granted it. The Buyers argue,

> The clerk's minutes regarding the partial summary judgment indicate the Court had orally ruled that the claims regarding misrepresentations and unfair or deceptive practices in connection with the sale of the car were not being dismissed. Both parties submitted proposed orders and objections to the other side's proposed order. Neither

(continued...)

8, finding an issue of material fact as to whether the Buyers understood there to be a warranty on the clutch based on the language in the Buyer's Guide. The court denied summary judgment on claim 9, regarding representations made by HFI in the sale of the Warranty Solutions extended warranty, but granted it to the extent that the fulfillment of the warranty was the responsibility of a third party. The court denied summary judgment on Buyers' claim 11 as to the change in the GAP insurance price.

Trial was held over three non-consecutive days on the remaining UDAP claims. At trial, the primary issue was whether the clutch was a part of the transmission, and therefore covered under the statutory warranty required by HRS § 481J-2(a).

On April 30, 2015, the District Court heard opening statements and took the expert testimony of Buyer's witness Kenneth B. Moniz. Moniz primarily testified that a manual transmission includes a clutch and thus qualified for the statutory warranty, and that the Buyers could not have damaged the clutch in the way described in the short time they possessed the Vehicle.

On June 25, 2015, the District Court took the testimony of Buyers and HFI employees, including HFI Service Advisor Tabios and HFI General Manager Daniel Asao (Asao). Buyers testified as to the process of purchasing the Vehicle, negotiation, test drives, GAP insurance, extended warranties, inclusion of "as is" provisions, and first purchase agreement. Buyers testified that they returned to HFI to take delivery and complete the second purchase agreement, and incurred expenses in driving from Kāne'ohe. Buyers further testified to returning to have the Vehicle checked out, and the alleged rescission and post-sale issues.

---

[12](...continued)
> called for dismissal of the Second Count. Only in the Court's own order does that feature appear. It is not clear from the order, but it may be that the Court had accepted [HFI's] reliance contention.

However, Buyers do not state they brought this discrepancy to the attention of the District Court, nor do they designate it as an error on appeal.

HFI's witnesses largely attested to the same broad facts as the Buyers, with the exception of the clutch's condition. The District Court heard expert testimony from Tabios, who testified that the clutch is separate from the manual transmission, and the clutch disc for the Vehicle upon physical examination, appeared to have been burned. Tabios testified that damage to the clutch is usually caused by the driver. Asao testified to the warranty change, and explained the purpose and substance of the Buyer's Guide.

On July 14, 2015, the trial concluded with the District Court ruling against the Buyers on their remaining claims. As to claims 7, 8, and 9, the court found the statutory warranty did not cover the clutch, and even if it did, Buyers did not establish the clutch was damaged at delivery. As to claim 11, the court held that, as the Buyers signed the agreement, they consented to the change in GAP insurance cost.

On August 13, 2015, the District Court entered the Fees and Costs Order. The court denied attorney's fees, but granted costs in the amount of $1,090.80. The court rejected HFI's attorney's fee request based on HRS § 607-14 regarding fees in actions in the nature of assumpsit, found that Buyers did not seek relief in the nature of assumpsit in this case and concluded that HRS § 480-13[13] only provided for a prevailing plaintiff's attorney's fees.

Buyers' appeal and HFI's cross-appeal followed.

## II. DISCUSSION

On appeal, although declining to present separate arguments regarding each of their points on appeal, Buyers argue the District Court erred in: (1) granting partial summary judgment and ruling that HFI did not engage in UDAP, Buyers did not establish damages or injury, and failed to prove HFI engaged in UDAP; (2) finding that HFI allowed Buyers to rescind the purchase agreement and return the Vehicle to HFI, but that HFI

---

[13]     See supra note 4.

retained the $1,000.00 down payment to offset damage to the car; (3) finding HFI's actions after the sale of the Vehicle were not UDAP because they took place after the sale; (4) imposing the burden of proof on Buyers to prove the Vehicle was defective prior to delivery; and (5) finding that HFI was justified in keeping the $1,000.00 down-payment for repairs to the Vehicle. In conjunction with these points, Buyers challenge Findings of Fact 28 and 34 and Conclusions of Law 3, 4, 5, and 6.[14]

On cross-appeal, HFI argues the District Court erred in denying HFI's request for reasonable attorney's fees under HRS § 607-14, concluding there was "no assumpsit relief sought by [Buyers] in this action."

---

[14]    The challenged findings and conclusions read as follows:

28.    Plaintiffs have failed to sustain their burden of proof that the clutch was damaged or otherwise defective at the time they took possession of the Vehicle on September 23, 2013.

. . . .

34.    HFI allowed Plaintiffs to rescind the purchase transaction and return the Vehicle to HFI.  However, HFI retained Plaintiff's $1,000.00 down payment to offset costs to repair the clutch, said repair costs having exceeded $1,000.00.

### CONCLUSIONS OF LAW

. . . .

3. Similarly, throughout the context of its contacts with Plaintiffs in September 2013, HFI did not engage in any act, representation, or omission which misled Plaintiffs regarding the Vehicle and warranty provisions related thereto.

4. Plaintiffs failed to establish that they were injured in their property and sustained damages due to any acts, representations, or omissions of HFI.

5. Plaintiffs failed to sustain their burden of proof that HFI engaged in any unfair or deceptive trade practices during the course of HFI's dealings with Plaintiffs.

6. HFI was legally justified in retaining Plaintiffs' $1,000.00 down payment.

7. If any of the foregoing Findings of Fact should be considered Conclusions of Law, the Court so concludes.  If any of the foregoing Conclusions of Law should be considered Findings of Fact, the Court so finds.

The Hawai'i Legislature enacted section 480-2 "in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen." Ai v. Frank Huff Agency, Ltd., 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980), overruled on other grounds by Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 982 P.2d 853 (1999). Hawai'i courts construe this section liberally, Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 229, 11 P.3d 1, 17 (2000), in light of the state legislature's intention to "'encourage those who have been victimized by persons engaging in unfair or deceptive acts or practices to prosecute their claim,' thereby affording 'an additional deterrent to those who would practice unfair and deceptive business acts.'" Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 317, 47 P.3d 1222, 1230 (2002) (quoting S. Stand. Comm. Rep. No. 600, in 1969 Senate Journal at 1111; H. Stand. Comm. Rep. No. 661, in 1969 House Journal at 882-83).

To obtain relief under section 480-13(b)(1), a consumer must establish three elements: "(1) a violation of [section] 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages." Davis v. Wholesale Motors, Inc., 86 Hawai'i 405, 417, 949 P.2d 1026, 1038 (App. 1997) (citations omitted).

Under section 480-2(a), "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HRS § 480-2(a). The supreme court has held that "a practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Balthazar v. Verizon Hawaii, Inc., 109 Hawai'i 69, 77, 123 P.3d 194, 202 (2005) (citation, internal quotation marks, and brackets omitted).

In Courbat v. Dahana Ranch, Inc., the court held "a deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." 111 Hawai'i 254, 262, 141 P.3d 427, 435 (2006) (citations, internal quotation marks, and

brackets omitted). "A representation, omission, or practice is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Id. (citations and internal quotation marks omitted). This inquiry is objective; the test is "whether the act or omission is likely to mislead consumers." Id. (citation and internal quotation marks omitted).

## BUYERS' APPEAL

The Buyers argument on appeal is essentially that HFI committed a series of UDAP in the course of the sale of the Vehicle. Specifically, Buyers allege that HFI, in violation of HRS § 480-2, (1) "highballed" by setting a very high initial asking price; (2) misrepresented that there was no Kelley Blue Book (KBB) value; (3) inflated the price from $40,000.00 to $41,800.47 in the purchase agreements; (4) refused to honor the agreement to cancel the purchase and refund the $1,000.00.00 deposit; (5) misrepresented to lender that Buyers had agreed to accept delivery; (6) threatened to report Buyers to credit reporting agencies that the Vehicle was repossessed; (7) increased the GAP cost from $495 to $695 on second purchase agreement; (8) interfered with the stop-payment order by claiming HFI towed the Vehicle and that Buyers had it for a longer period of time; (9) harassed Buyers by phone; and (10) kept Buyers' down payment. These will be separated into pre-sale and post-sale arguments.

Buyers' first pre-sale argument is that HFI "tricked [them] into thinking they were receiving a fair price by initially demanding an exorbitant amount[,]" which they term highballing. Buyers cite no statutory or case law deeming this a UDAP. Buyers cite Winey v. William E. Dailey, Inc., 636 A.2d 744, 747-48 (Vt. 1993), for the proposition that lowballing is an UDAP. In that case, a building contractor offered a price below what would be required to complete the job to induce the buyer to begin construction and then increased the costs. Id. The facts here are not analogous. The practice of a dealer advertising a high initial asking price cannot be said to be unfair or misleading. In fact, Buyer Lindsey stated in his deposition, that the advertised price was "[s]omething outrageous. I thought

11

it was like [$]50, [$]59,000 maybe or--something stupid." However, he acknowledged that he was able to negotiate the price down quickly because he believed "[HFI] knew [the price was] ridiculous." Therefore, because there was no representation or practice that was unfair or likely to mislead a consumer, there was no UDAP.

Buyers' second pre-sale argument is that HFI misrepresented that there was no KBB value for the Vehicle. Buyers cite Davis, which held a dealer committed a UDAP when it misrepresented the KBB trade-in value of a vehicle to induce the transaction. 86 Hawai'i at 420, 949 P.2d at 1042. At trial, Asao testified the Vehicle was the very limited GT500KR "King of the Road" edition of the Ford Mustang Shelby GT500. Buyers point to no evidence in the record establishing that there was a KBB value for the exact model as the Vehicle at the time of their purchase. Therefore, Buyers failed to prove that a misrepresentation was made.

Buyers' third pre-sale argument is that HFI inflated the price from $40,000.00 to $41,800.47 on the purchase agreement. The evidence presented to the District Court was the Buyers' testimony and a negotiation sheet. The negotiation sheet has a wide variety of numbers and strike outs but no clear agreed upon value. Buyers argue that, although they did agree to purchase the Vehicle at the higher base price by signing the agreement, this agreement was obtained by fraud because they trusted HFI to prepare the sales documents with the negotiated amount and HFI had a duty to bring the change in price to their attention. "The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained." Leong v. Kaiser Found. Hosps., 71 Haw. 240, 245, 788 P.2d 164, 168 (1990). The Buyers signed two different contracts with the base price of the Vehicle set at $41,800.47. The District Court found, and the Buyers do not challenge the finding, that the Buyers voluntarily signed the second agreement. Therefore, there is no misrepresentation or practice that was unfair or likely to mislead a consumer and therefore Buyers did not prove this was a UDAP.

12

Buyers' fourth pre-sale argument is that HFI increased the price of the GAP insurance without explanation on the second purchase agreement. The District Court noted that Buyers had every opportunity to review the documentation and voluntarily signed the second agreement. Indeed, Asao testified that the GAP price increased with the change in financing and was listed on the second purchase agreement. From the record, Buyers did not prove there was a misrepresentation or practice that was unfair or likely to mislead a consumer and there was no UDAP.

Regarding the post-sale alleged UDAP, where Buyers alleged HFI reneged on a promise to cancel the second purchase agreement and to refund their deposit/down payment, the District Court found, in finding #34, that "HFI allowed [Buyers] to rescind the purchase transaction and return the Vehicle to HFI. However, HFI retained [Buyers'] $1,000.00 down payment to offset costs to repair the clutch, said repair costs having exceeded $1,000.00."

Buyers agree that HFI, through its finance manager, agreed to rescission of the purchase transaction but that HFI ultimately kept the down payment. Buyers appear to take issue with the part of the District Court's finding #34 that HFI retained the down payment as an offset for the clutch repair. Related to this issue is Buyer's challenge of the District Court's finding #28 in which it found Buyers failed in their burden of proving that the clutch was damaged or otherwise defective when they took possession of the Vehicle.

As to the latter, finding #28, HFI presented evidence that the prior owner of the Vehicle, who was also a mechanic by trade, had no problems with the clutch, that their employees inspected and road-tested the Vehicle before it was delivered to Buyers and reported no damage to the clutch but when Buyers returned the Vehicle the clutch was "burnt." HFI's certified mechanic testified that a clutch could be damaged by driving for just a few miles. Buyers presented testimony by their expert who opined that it would be "very rare" that the clutch in a car such as the Vehicle would fail after driving it for forty miles, no matter how it was driven. However, this witness also testified that he did not "see anything wearing out in 15,000 miles, no

matter how you drove the car." It was for the District Court to resolve conflicts in testimony and determine credibility of the respective witnesses. Tamashiro v. Control Specialist, Inc., 97 Hawaiʻi 86, 92, 34 P.3d 16, 22 (2001). On this record, we cannot say that finding #28 was clearly erroneous. Bhakta v. Cnty. of Maui, 109 Hawaiʻi 198, 208, 124 P.3d 943, 953 (2005) (findings of fact are reviewed for clear error).

As to finding #34, the District Court apparently found that the representation of HFI's finance manager who agreed to "unwind" the deal and return the $1,000.00 down payment constituted an agreement to rescind the purchase agreement, because the court could not have found HFI held the money as an "offset" unless it found the money belonged to Buyers. "Rescission developed as an equitable remedy and has the effect of cancelling, abrogating, or disaffirming a contract; it restores all parties to their status quo positions prior to the agreement. Leslie v. Estate of Tavares, 93 Hawaiʻi 1, 994 P.2d 1047 (2000)." E. Sav. Bank, FSB v. Esteban, 129 Hawaiʻi 154, 157 n.5, 296 P.3d 1062, 1065 n.5 (2013). Thus, we interpret the District Court's finding #34 as a finding that the sales contract was rescinded, and although the Buyers would have been entitled to a return of their down payment as a result, that sum was applied to the cost of repairs to the Vehicle for damage to the clutch that occurred after Buyers took delivery.[15] The District Court did not clearly err in so finding.

Regarding the remainder of Buyers' post-sale UDAPs, that HFI told their lender Buyers would accept delivery, threatened to report the Vehicle repossessed, interfered with the stop-payment order by making misrepresentations to the credit card company, and threatened legal action by phone to the Buyers: Buyers have traced no line between these alleged UDAP and any harm cognizable under HRS § 480-2 that Buyers have suffered. Therefore, to the extent that any of the remaining

---

[15]     Buyers argue that HFI "never established the value of its claimed off-set." However, submitted into evidence was the testimony of Tabios and the exhibit attached to his deposition which showed that the cost of the clutch repairs was $1,110.04.

allegations are UDAP, there is no attendant harm and they are not actionable under HRS § 480-2.

**HFI'S CROSS-APPEAL**

On cross-appeal, HFI argues the District Court erred in denying HFI's request for reasonable attorney's fees as prevailing party in this litigation under HRS §§ 607-14 and 480-13. On appeal, this court reviews the trial court's grant or denial of attorneys' fees and costs under the abuse of discretion standard. Price v. AIG Hawai'i Ins. Co., 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. We start with the concept that the "American Rule" is that each party is responsible for their own litigation expenses, but that an exception to that rule is where there is authority for such an award in a statute, stipulation or agreement. TSA Int'l, Ltd. v. Shimizu Corp., 92 Hawai'i 243, 263, 990 P.2d 713, 733 (1999); Hall v. Laroya, 124 Hawai'i 187, 190, 238 P.3d 714. 717 (App. 2010) ("HRS § 607-14 is a statutory exception to the American Rule.") Whether an action is "in the nature of assumpsit" is "determined from the substance of the entire pleading, the nature of the grievance, and the relief sought[.]" S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 76 Hawai'i 396, 400, 879 P.2d 501, 505 (1994) (citation and internal quotation marks omitted).

As the District Court pointed out in its Fees and Costs Order, HRS § 480-13 provides for attorney's fees for plaintiffs who obtain judgment in their favor. TSA, 92 Hawai'i at 264 n.9, 990 P.2d at 734 n.9. While HRS § 607-14 provides for attorney's fees to the prevailing party for actions in the nature of assumpsit, Buyers' complaint was based solely on alleged UDAP violations and did not plead any contract claims. Therefore, we conclude that the District Court did not abuse its discretion in denying HFI its attorney's fees.

## III. CONCLUSION

For these reasons, the March 24, 2015 Order on Motion for Summary Judgment, the August 25, 2015 Judgment, and the

August 13, 2015 Order on Non-Hearing Motion for Recovery of Attorneys Fees and Costs entered by the District Court of the First Circuit, Honolulu Division, are affirmed.

DATED:  Honolulu, Hawai'i, March 28, 2019.

On the briefs:

Charles S. Lotsof,
for Plaintiffs-Appellants/
Cross-Appellees.

Presiding Judge

Michael R. Vieira
Benjamin M. Creps
(Asford & Wriston),
for Defendant-Appellee/
Cross-Appellant.

Associate Judge

Keith K Hiraoka

Associate Judge

16